**KALIEL GOLD PLLC**
JEFREY D. KALIEL (SBN 238293)
SOPHIA G. GOLD (SBN 307971)
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
E-mail: jkaliel@kalielpllc.com
      sgold@kalielgold.com

[Additional Counsel on Signature Page]

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT ROMOFF and JOE SICILIANO,<br><br>          Plaintiffs,<br><br>   v.<br><br>GENERAL MOTORS LLC,<br><br>          Defendant. | Case No.: **'21 CV0938 WQHBGS**<br><br><u>CLASS ACTION COMPLAINT FOR:</u><br><br>(1) VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW;<br>(2) VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT;<br>(3) VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT; AND<br>(4) UNJUST ENRICHMENT.<br><br><u>DEMAND FOR JURY TRIAL</u> |

CLASS ACTION COMPLAINT

Plaintiffs Robert Romoff and Joe Siciliano ("Plaintiffs"), on behalf of themselves and all other similarly situated members of the below-defined classes they respectively seek to represent (collectively, the "Class"), allege against Defendant General Motors LLC ("GM" or "Defendant"), upon personal knowledge as to the factual allegations pertaining to themselves and as to all other matters upon information and belief, based upon the investigation made by the undersigned attorneys, as follows:

## I.   **INTRODUCTION**

1.     This case concerns GM's deceptive and unfair practice of misleading consumers into overpaying for its vehicles by inflating the amount customers must pay for the delivery of their vehicles (*i.e.*, the "destination fee") when purchasing or leasing a new vehicle at one of GM's authorized dealerships.

2.     A vehicle's destination fee is generally understood in the automotive industry to reflect the manufacturer's average cost of delivering one of its vehicles to a dealership.  That destination fee is charged to the dealer and passed on to the purchaser or lessee of that vehicle.  Consumers similarly have the expectation that they are covering an automotive manufacturer's cost for the delivery of the manufacturer's vehicles when paying the "destination fee" as part of their new-vehicle lease or purchase.

3.     The same is true for the destination fee at issue here, which GM refers to as the vehicle's "Destination Charge."   At all relevant times, GM has added the Destination Charge to the price of each new Chevrolet-, Cadillac-, Buick-, and GMC--branded vehicle that has been offered for sale in the United States (the "Class Vehicles").   Unfortunately for consumers, the amount of GM's Destination Charge increased sharply over the years and currently reaches as high as a whopping $1,695.00 for many of the Class Vehicles.

4.     GM discloses the Destination Charge, along with other essential pricing information, on the window sticker of each Class Vehicle ("Monroney sticker") and require that the specific amount of the Destination Charge be passed through to

CLASS ACTION COMPLAINT

consumers, who are not allowed to negotiate the amount as part of the Class Vehicle's overall price.  As a result, consumers who desire to purchase or lease one of GM's vehicles are forced to pay the exorbitant Destination Charge and do so based on the belief that it is a legitimate charge directly related to the cost of delivering the Class Vehicle.

5.      Despite the general understanding of the automotive industry and the reasonable expectations of consumers, however, GM includes a significant amount of profit in its Destination Charge and, in doing so, deceives customers into paying far more than the actual cost of vehicle delivery when purchasing or leasing one of the Class Vehicles.

6.      In fact, GM's Destination Charge has little correlation to the cost of delivering the Class Vehicles to their intended destination (*i.e.*, GM's dealerships) at all, and instead, has become a huge profit center for Defendant.  Indeed, the Destination Charge allows GM to extract hidden markups on the sale of the Class Vehicles from unsuspecting consumers.

7.      As a direct and proximate result of GM's concealment of and failure to disclose the profit that is included in the Destination Charge, Plaintiffs overpaid for their Class Vehicles.  Plaintiffs have purchased and leased Class Vehicles that they would not otherwise have purchased or leased, or would have paid less for, had they known that GM's Destination Charge was not a legitimate charge related to the cost of delivery the Class Vehicles to its dealers at the point of sale.  Plaintiffs have consequently suffered ascertainable losses and actual damages as a result of GM's unlawful conduct.

8.      Accordingly, Plaintiffs, on behalf of themselves and the Class of similarly situated purchasers and lessees of the Class Vehicles seek damages and restitution to recover the inflated amounts paid to GM as part of its Destination Charge, as well as injunctive relief to prevent GM from continuing its wrongful conduct, as alleged herein.

CLASS ACTION COMPLAINT

## II.   JURISDICTION AND VENUE

9.    This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed class is a citizen of a different state than Defendant.

10.    The Court has personal jurisdiction over GM because GM has purposefully availed itself of the privilege of conducting business activities in the State of California.

11.    Venue is proper in this District, pursuant to 28 U.S.C. §1391, because a substantial part of the acts or omissions giving rise to the claims brought herein occurred or emanated within this District, GM has marketed, advertised, sold, and leased the Class Vehicles in this District, and GM has caused harm to one or more Plaintiffs residing in this District.

## III.   PARTIES

**A.    Plaintiffs**

12.    Plaintiff Robert Romoff (for the purpose of this section, "Plaintiff") is a citizen of California, residing in San Diego, California.  Plaintiff purchased a new 2021 Chevrolet Equinox (for the purpose of this section, the "Class Vehicle") at Quality Chevrolet, one of GM's authorized dealers located in San Diego, California.

13.    Prior to purchasing the Class Vehicle, Plaintiff viewed the Class Vehicle's Monroney sticker, including the $1,195.00 amount represented by GM as the "Destination Charge" for the Class Vehicle.

14.    Plaintiff reasonably believed that the $1,195.00 Destination Charge represented GM's cost to deliver the Class Vehicle to Quality Chevrolet, and further understood that the Destination Charge was a pass-through cost that he was required to pay and unable to negotiate as part of the Class Vehicle's overall price.

15.    GM failed to disclose that it had included profit in the Destination Charge,

- 4 -

CLASS ACTION COMPLAINT

and Plaintiff, therefore, purchased his Class Vehicle on the reasonable, but mistaken, belief that profit was not included in the Destination Charge.

16.    Plaintiff reasonably relied to his detriment on GM's representation regarding its $1,195.00 Destination Charge and its subsequent omissions regarding the true nature of the Destination Charge, which had been inflated with profit.

17.    Plaintiff has been damaged by GM's material representations and omissions regarding the Destination Charge for his Class Vehicle in that he overpaid for his vehicle by paying the full $1,195.00 amount of the Destination Charge when purchasing his Class Vehicle.

18.    Plaintiff Joe Siciliano (for the purpose of this section, "Plaintiff") is a citizen of New Jersey, residing in Wantage, New Jersey.  Plaintiff purchased a new 2019 Cadillac Escalade (for the purpose of this section, the "Class Vehicle") at Callaremi Cadillac, one of GM's authorized dealers located in Hackettstown, New Jersey.

19.    Prior to purchasing the Class Vehicle, Plaintiff viewed the Class Vehicle's Monroney sticker, including the $995.00 amount represented by GM as the "Destination Charge" for the Class Vehicle.

20.    Plaintiff reasonably believed that the $995.00 Destination Charge represented GM's cost to deliver the Class Vehicle to Callaremi Cadillac, and further understood that the Destination Charge was a pass-through cost that he was required to pay and unable to negotiate as part of the Class Vehicle's overall price.

21.    GM failed to disclose that it had included profit in the Destination Charge, and Plaintiff, therefore, purchased his Class Vehicle on the reasonable, but mistaken, belief that profit was not included in the Destination Charge.

22.    Plaintiff reasonably relied to his detriment on GM's representation regarding its $995.00 Destination Charge and its subsequent omissions regarding the true nature of the Destination Charge, which had been inflated with profit.

23.    Plaintiff has been damaged by GM's material representations and

- 5 -

CLASS ACTION COMPLAINT

omissions regarding the Destination Charge for his Class Vehicle in that he overpaid for his vehicle by paying the full $995.00 amount of the Destination Charge when purchasing his Class Vehicle.

**B.    Defendant**

24.    Defendant GM is a Delaware corporation with its principal place in Detroit, Michigan.  GM designs, engineers, manufactures and sells vehicles under the Chevrolet, Cadillac, Buick, and GMC brands.  GM is the largest American automobile manufacturer and the largest automobile manufacturer in the world.

**IV.   FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

25.    GM deceives consumers regarding the costs of shipping its vehicles by adding a deceptively-named "Destination Charge" to each of its automobile sales.

26.    By labeling the fee a "Destination Charge," GM leads reasonable consumers to believe the "charge" reflects the cost for delivering the vehicle to its "destination."    By virtue of the name of the fee itself, GM misleads reasonable consumers into believing its "Destination Charge" reflects the actual cost of shipping its vehicles to their "destination," not the cost of shipping its vehicles *plus* profit.

27.    GM's price stickers break out the Destination Charge separate and apart from the base MSRP and include it as an add-on.  With this chicanery, the vehicle itself appears less expensive, and GM's artificial "Destination Charge" can be used as a vessel for profit that would otherwise appear in the cost of the vehicle.

28.    But despite its name, the "Destination Charge," has little to do with getting the vehicle to its intended destination, and the name of the fee is itself a misrepresentation to shoppers.

29.    Simple math shows this is true.  While fuel and shipping costs have remained fairly constant over the last decade, the same cannot be said about GM's Destination Charge during that same period.  A recent study by Consumer Reporters revealed that GM's Destination Charge on its vehicles rose an average of approximately 34 percent since 2011.  The fee charges on the Chevrolet Silverado,

CLASS ACTION COMPLAINT

specifically, rose to $1,695 in 2021, up from $1,295 in 2018—a 31 percent increase in just three years.

30.　　In sum, the increase in GM's Destination Charge over the past decade has not and is not correlated with the actual increase in costs of shipping.  That is why other automakers "destination fees" have not increased at the same pace during this same ten-year period.  Audi, BMW, Infiniti, Lexus, Mercedes-Benz and Volvo each grew their fees by less than 20 percent over the past decade.

31.　　GM uses its informational advantage—it knows exactly what it costs to ship vehicles to their "destination"—to exploit consumers, knowing full well that consumers have no way of verifying or even estimating what it costs to send a vehicle from one side of the country to another.

32.　　It was reasonable for Plaintiffs to understand that the separate line item called "Destination Charge" bore a reasonable relation to the shipping costs for the vehicle.  Indeed, that is the very reason for a specially designated line-item charge.  While consumers understand a lump sum price can include anything—including profit—the same is not true for line items.  Line items are intended to inform consumers of the reason they are being charged.  For that reason, consumers do not generally expect line-item costs to include hidden profit.

33.　　Federal law also supports this reasonable assumption. The Federal Automobile Information Disclosure Act requires manufacturers to disclose on the Monroney sticker "the amount charged to the dealer for the transportation of the car to the place of delivery."  Reasonable consumers believe that the dealer pays the actual costs of delivery, and not a charge that has no correlation to the costs of transporting the vehicle to the dealership.

34.　　It is precisely because of this reasonable consumer understanding that other major industry participants routinely disclose that their "destination fees" are largely comprised of profit, not the actual cost of shipping.  Indeed, Toyota, for example, labels its destination fee as a "Delivery, Processing and Handling Fee" and

explains on its website that "Toyota may make a profit on the Delivery, Processing and Handling Fee." GM makes no such disclosure.

35. Instead, GM omits critical information concerning the Destination Charge. GM never discloses that the Destination Charge far exceeds the actual costs it pays to transport its vehicles to dealers. Further, GM does not disclose the methodology (if there is one) in calculating the Destination Charge. In truth, GM devised, implemented, and arbitrarily set the amount of the Destination Charge without any intent to actually recover the true costs of shipping its vehicles.

36. GM's conduct is likely to mislead consumers acting reasonably under the circumstances, as is evidenced by Plaintiffs' experience, as described herein.

## V. TOLLING OF THE STATUTE OF LIMITATIONS

### A. Fraudulent Concealment Tolling

37. At all relevant times, GM has known that profit is included in its Destination Charge, and has concealed from, or failed to, notify Plaintiffs and Class members of the full and complete nature of the Destination Charge. GM continues to conceal the fact that profit is included in its Destination Charge to this day.

38. Any applicable statue of limited has been tolled by GM's knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

### B. Estoppel

39. GM was, and is, under a continuous duty to disclose to Plaintiffs and Class members the true nature of its Destination Charge. GM actively concealed—and continues to conceal—the true nature of its Destination Charge and knowingly made misrepresentations about the nature of the Destination Charge. Plaintiffs and Class members reasonably relied upon GM's knowing affirmative representatives and/or active concealment of these facts. Based on the foregoing, GM is estopped from relying on any statutes of limitations in defense of this action.

CLASS ACTION COMPLAINT

**C.     Discovery Rule**

40.     The causes of action alleged herein did not accrue until Plaintiffs and Class members discovered that their Class Vehicles' Destination Charge contained profit.

41.     Plaintiffs and Class members had no realistic ability to discern that the Class Vehicles' Destination Charge included profit because of GM's active concealment of that fact.

42.     Thus, Plaintiffs and Class members were not reasonably able to discover the fact that GM's Destination Charge included profit until after they had purchased or leased the Class Vehicles, despite their exercise of due diligence, and their causes of action did not accrue until they discovered that fact.

## VI.     <u>CLASS ALLEGATIONS</u>

43.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.   This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

44.     The proposed classes are defined as:

> All consumers who, during the applicable statute of limitations, purchased or leased a Class Vehicle in the state of California and paid a Destination Charge (the "California Class").

> All consumers who, during the applicable statute of limitations, purchased or leased a Class Vehicle in the state of New Jersey and paid a Destination Charge (the "New Jersey Class").

45.     Plaintiffs reserve the right to modify or amend the Class definitions before the Court determines whether certification is appropriate.

CLASS ACTION COMPLAINT

46.     Excluded from the Class are GM, its parents, subsidiaries, affiliates, officers and directors, any entity in which GM has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

47.     The members of the Class are so numerous that joinder is impractical.  The Class consists of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to GM's records.

48.     The claims of the representative Plaintiffs are typical of the claims of the Class they seek to represent in that the representative Plaintiffs, like all Class members, was charged improper and deceptive fees as alleged herein.   The representative Plaintiffs, like all Class members, have been damaged by GM's misconduct in that they have been assessed a deceptive Destination Charge.  Furthermore, the factual basis of GM's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class.

49.     There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

50.     Among the questions of law and fact common to the Class are whether Defendant:

        a.     Misrepresented the cost of transporting the Class Vehicles to its dealerships;

        b.     Violated the consumer protection acts of certain states through its misrepresentations and omissions regarding the Destination Charge;

        c.     The proper method or methods by which to measure damages, and

        d.     The declaratory and injunctive relief to which the Class are entitled.

51.     Plaintiffs' claims are typical of the claims of other Class members, in that

1  they arise out of the same wrongful conduct.  Plaintiffs have suffered the harm alleged

2  and has no interests antagonistic to the interests of any other Class member.

3      52.    Plaintiffs are committed to the vigorous prosecution of this action and has

4  retained competent counsel experienced in the prosecution of class actions and, in

5  particular, class actions on behalf of consumers and against financial institutions.

6  Accordingly, Plaintiffs are adequate representatives and will fairly and adequately

7  protect the interests of the Class.

8      53.    A class action is superior to other available methods for the fair and

9  efficient adjudication of this controversy.  Since the amount of each individual Class

10  member's claim is small relative to the complexity of the litigation, and due to the

11  financial resources of Defendant, no Class member could afford to seek legal redress

12  individually for the claims alleged herein.  Therefore, absent a class action, the Class

13  members will continue to suffer losses and GM's misconduct will proceed without

14  remedy.

15      54.    Even if Class members themselves could afford such individual litigation,

16  the court system could not.  Given the complex legal and factual issues involved,

17  individualized litigation would significantly increase the delay and expense to all

18  parties and to the Court.  Individualized litigation would also create the potential for

19  inconsistent or contradictory rulings.  By contrast, a class action presents far fewer

20  management difficulties, allows claims to be heard which might otherwise go unheard

21  because of the relative expense of bringing individual lawsuits, and provides the

22  benefits of adjudication, economies of scale and comprehensive supervision by a single

23  court.

24      55.    Plaintiffs know of no difficulty to be encountered in the maintenance of

25  this action that would preclude its treatment as a class action.

26      56.    GM has acted or refused to act on grounds generally applicable to each of

27  the Class, thereby making appropriate final injunctive relief or corresponding

28  declaratory relief with respect to each Class as a whole.

CLASS ACTION COMPLAINT

57.     All conditions precedent to bringing this action have been satisfied and/or waived.

## VII. <u>CAUSES OF ACTION</u>

### COUNT I

### <u>Violation of California's Unfair Competition Law ("UCL")</u>

### (CAL. BUS. & PROF. CODE §17200, *et seq.*)

### On Behalf of the California Class

58.     Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

59.     Plaintiff Romoff brings this claim on behalf of himself and the California Class.

60.     In the course of its business, GM violated the UCL by engaging in the following unlawful, fraudulent, and unfair business acts and practices:

    a.    misrepresenting material facts pertaining to the sale and/or furnishing of the Class Vehicles to the California Class by misrepresenting its Destination Charge;

    b.    omitting, suppressing, and concealing the material fact that its Destination Charge contained profit.

    c.    selling and leasing the Class Vehicles to Plaintiffs and the California Class members with knowledge that its Destination Charge contained profit, and intentionally concealing that fact from Plaintiffs and California Class members; and

    d.    violating California statutory law proscribing unfair methods of competition and unfair or deceptive acts or practices" (CAL. CIV. CODE §1750, *et seq.*) and false advertising (CAL. BUS. & PROF. CODE §17500, *et seq.*), and the public policy expressed by the California Legislature (CAL. CIV. CODE §2981, *et seq.*) and the United States Congress (15 U.S.C. §1232, *et seq.*) of protecting

CLASS ACTION COMPLAINT

motor vehicle purchasers from abusive selling practices and excessive charges.

61.  GM's scheme and concealment of the true characteristics of the California Class Vehicles were material to Plaintiff and the California Class members, and GM misrepresented, concealed, or failed to disclose the truth with the intention that Plaintiff and the California Class members would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, Plaintiff and the California Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

62.  Plaintiff and the California Class members suffered ascertainable loss and actual damages as a direct and proximate result of GM's misrepresentations and its concealment of and failure to disclose material information.

63.  Pursuant to CAL. BUS. & PROF. CODE §17200, Plaintiff and the California Class members seek any such orders or judgments as may be necessary to restore to Plaintiff and Class members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in CAL. BUS. & PROF. CODE §§17203 and 3345, and any other just and proper relief available under the UCL.

## COUNT II

### Violation of California's Consumer Legal Remedies Act ("CLRA")

### Cal. Civ. Code § 1750, *et seq.*

### (On Behalf of the California Class)

64.  Plaintiffs incorporate the preceding allegations by reference as if fully set forth herein.

65.  This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq*.  Plaintiff and each member of the proposed Class are "consumers" as defined by California Civil Code § 1761(d). Defendant's sale of vehicles were "transactions" within the meaning of California Civil Code § 1761(e). The vehicles purchased by Plaintiffs and the Class are "goods" within

- 13 -

the meaning of California Civil Code § 1761(a).

66.    Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of vehicles by Defendant:

a.    "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5); and

b.    "Advertising goods or services with intent not to sell them as advertised" (a)(9).

67.    Defendant's scheme and concealment of the true characteristics of the Class Vehicles were material to Plaintiff and the Class members, and Defendant misrepresented, concealed, or failed to disclose the truth with the intention that Plaintiff and the Class members would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, Plaintiff and the Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

68.    Defendant continues to violate the CLRA and continues to injure the public by misleading consumers about its fees. Accordingly, Plaintiff seeks injunctive relief on behalf of the general public to prevent Defendant from continuing to engage in these deceptive and illegal practices.  Otherwise, Plaintiff, the Class members, and members of the general public may be irreparably harmed and/or denied effective and complete remedy if such an order is not granted.

69.    In accordance with Cal. Civ. Code § 1780(a), Plaintiff and the Class members seek injunctive and equitable relief on behalf of the general public for violations of the CLRA, including restitution and disgorgement.

70.    Pursuant to § 1782(a) of the CLRA, Plaintiff's counsel notified Defendant in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to

CLASS ACTION COMPLAINT

respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782, Plaintiff will move to amend his Complaint to include a request for damages.  At this time, however, Plaintiff seeks only injunctive relief.

**COUNT III**

**Violation of the New Jersey Consumer Fraud Act**

**(N.J. Stat. Ann. § 56:8-1)**

**(On Behalf of the New Jersey Class)**

71.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

72.    Plaintiff Siciliano (for the purposes of this section, "Plaintiff") brings this claim on behalf of himself and the New Jersey Class.

73.    Defendant, Plaintiff, and the New Jersey Class members are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

74.    Defendant is engaged in "sales" of "merchandise" within the meaning of §56:8-1(c) and (e).

75.    The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby."  N.J. Stat. Ann. §56:8-2.

76.    In the course of its business, Defendant violated the New Jersey CFA by knowingly misrepresenting and/or intentionally concealing material facts regarding the true nature of its Destination Charge.  Specifically, in marketing, offering for sale/lease,

and selling/leasing the Class Vehicles, Defendant engaged in one or more of the following unfair or deceptive acts or practices prohibited by the New Jersey CFA:

      a.   Defendant misrepresented material facts, pertaining to the sale and/or furnishing of the Class Vehicles to the New Jersey Class by misrepresenting its Destination Charge; and

      b.   Defendant omitted, suppressed, and concealed the material fact that its Destination Charge contained profit.

77.   Defendant's scheme and concealment of the true nature of the Class Vehicles were material to Plaintiff and the New Jersey Class, and Defendant misrepresented, concealed, or failed to disclose the truth with the intention that Plaintiff and the New Jersey Class members would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, Plaintiff and the New Jersey Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

78.   Plaintiff and the New Jersey Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose.

79.   Defendant had an ongoing duty to Plaintiff and the New Jersey Class members to refrain from unfair and deceptive practices under the New Jersey CFA in the course of its business.  Specifically, Defendant owed Plaintiff and the New Jersey Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, they intentionally concealed such material facts from Plaintiff and the New Jersey Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

80.   Defendant systematically engaged in these deceptive, misleading, and unlawful acts and practices, to the detriment of Plaintiff and members of the New Jersey Class.

CLASS ACTION COMPLAINT

81.   As a direct and proximate result of Defendant's deceptive, misleading, and unlawful acts and practices, Plaintiff and members of the New Jersey Class paid an inflated Destination Charge.  Accordingly, they have suffered and will continue to suffer actual damages.

82.   Plaintiff and New Jersey Class Members are entitled to relief including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

83.   As a direct and proximate result of Defendant's deceptive trade practices, Plaintiff and members of the New Jersey Class suffered injury and/or damages, including the payment of an inflated Destination Charge.

84.   As a result of Defendant's violations of the New Jersey CFA, Plaintiff and each member of the New Jersey Class have paid an inflated Destination Charge. Accordingly, Plaintiff and members of the New Jersey Class have suffered ascertainable loss and actual damages.

85.   Accordingly, Plaintiff and New Jersey Class members are entitled to relief under New Jersey CFA, including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

86.   As a direct and proximate result of Defendant's deceptive, misleading, and unlawful acts and practices, Plaintiff and members of the New Jersey Class suffered injury and/or damages, including the payment of an inflated Destination Charge. Accordingly, Plaintiff and members of the New Jersey Class have suffered ascertainable loss and actual damages.

87.   Pursuant to N.J. STAT. ANN. §56:8-19, Plaintiff and the New Jersey Class members seek an order awarding damages, treble damages, and any other just and proper relief available under the New Jersey CFA.

## **COUNT IV**

## **Unjust Enrichment**

## **(On Behalf of the California and New Jersey Classes)**

- 17 -

88.    Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

89.    Plaintiffs bring this claim on behalf of themselves and the California Class and New Jersey Class (for the purposes of this section, the "Classes").

90.    To the detriment of Plaintiffs and the Classes, GM has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

91.    Plaintiffs and the Classes conferred a benefit on GM when they paid GM's Destination Charge that they were misled into believing was the actual costs of shipping the vehicle from the manufacturer to the dealership, without the inclusion of profit.

92.    GM unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow GM to retain.

93.    GM's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

94.    Plaintiffs and the Classes, therefore, seek disgorgement of all wrongfully obtained fees received by GM as a result of its inequitable conduct as more fully stated herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class demand a jury trial on all claims so triable and judgment as follows:

a)    Declaring GM's Destination Charge policies and practices described herein to be misleading and wrongful;

b)    Restitution by to Plaintiffs and the Class in an amount to be determined at trial;

c)    Disgorgement of the ill-gotten gains derived by GM from its misconduct;

d)    Actual damages in an amount according to proof;

e)    Punitive and exemplary damages;

f)    Pre-judgment interest at the maximum rate permitted by applicable law;

CLASS ACTION COMPLAINT

g)      Treble damages, statutory damages, and attorneys' fees as provided by law;

h)      Costs and disbursements assessed by Plaintiffs in connection with this action,        including reasonable attorneys' fees pursuant to applicable law; and

i)      Such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated: May 17, 2021

**KALIEL GOLD PLLC**
JEFREY D. KALIEL
SOPHIA G. GOLD


*/s/ Jeffrey D. Kaliel*
JEFFREY D. KALIEL

1100 15th Street, NY, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
E-mail: jkaliel@kalielpllc.com
       sgold@kalielgold.com

KOPELOWITZ OSTROW FERGUSON
  WEISELBERG GILBERT
JASON H. ALPERSTEIN
JEFF OSTROW
JONATHAN STREISFELD
1 West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: (954) 525-4100
Facsimile: (619) 525-4300
E-mail: alperstein@kolawyers.com
       ostrow@kolawyers.com
       streisfeld@kolawyers.com

Attorneys for Plaintiffs

CLASS ACTION COMPLAINT