UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT ROMOFF and JOE SICILIANO, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS LLC,<br><br>Defendant. | Case No.: 21-cv-00938-WQH-BGS<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss Plaintiffs' Class Action Complaint filed by Defendant General Motors LLC. (ECF No. 12).

## I. PROCEDURAL BACKGROUND

On May 17, 2021, Plaintiffs Robert Romoff and Joe Siciliano filed a Class Action Complaint against Defendant General Motors LLC ("GM"). (ECF No. 1). The Complaint alleges that GM violated California and New Jersey law by including a "Destination Charge" in the listed sticker price of its vehicles that did not reflect the actual cost to GM of delivering the vehicles to dealerships and by failing to disclose that the charge included profit. (*See id.*).

On August 2, 2021, GM filed a Motion to Dismiss Plaintiffs' Class Action Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 12). On August 24, 2021, Plaintiffs filed an Opposition to the Motion to Dismiss. (ECF No. 13). On August 31, 2021, Defendant filed a Reply. (ECF No. 14).

## II. ALLEGATIONS IN THE COMPLAINT

Defendant GM "designs, engineers, manufactures and sells vehicles." (ECF No. 1 ¶ 24). The "Monroney" price stickers on vehicles sold by GM "break out [a] Destination Charge separate and apart from the base MSRP and include it as an add-on." (*Id.* ¶ 27). This disclosure is mandated by the Federal Automobile Information Disclosure Act, which requires manufacturers to list "the amount charged to the dealer for the transportation of the car to the place of delivery." (*Id.* ¶ 32). "A vehicle's destination fee is generally understood in the automotive industry to reflect the manufacturer's average cost of delivering one of its vehicles to a dealership." (*Id.* ¶ 2). "Line items are intended to inform consumers of the reason they are being charged" and "[c]onsumers do not generally expect line-item costs to include hidden profit." (*Id.* ¶ 32).

"Despite its name, the 'Destination Charge' has little to do with getting the vehicle to its intended destination" and instead is used as a "vessel for profit." (*Id.* ¶¶ 27-28). "[T]he increase in GM's Destination Charge over the past decade has not and is not correlated with the actual increase in costs of shipping." (*Id.* ¶ 30). "[O]ther automakers['] 'destination fees' have not increased at the same pace during this ten-year period." (*Id.* ¶ 30). "[O]ther major industry participants routinely disclose that their 'destination fees' are largely comprised of profit." (*Id.* ¶ 32). GM "never discloses that the Destination Charge far exceeds the actual costs it pays to transport its vehicles to dealers." (*Id.* ¶ 35). By labelling the charge a "Destination Charge," GM "misleads reasonable consumers into believing its 'Destination Charge' reflects the actual cost of shipping its vehicles to their 'destination,' not the cost of shipping its vehicles *plus* profit." (*Id.* ¶ 26).

Plaintiffs Robert Romoff and Joe Siciliano are citizens of California and New Jersey, respectively, who purchased new GM vehicles. Prior to purchasing the vehicles, Plaintiffs viewed the vehicles' price stickers. Romoff's vehicle included a Destination Charge of $1,195 and Siciliano's vehicle included a Destination Charge of $995. Plaintiffs "reasonably believed that the . . . Destination Charge represented GM's cost to deliver" the vehicles "and further understood that the Destination Charge was a pass-through cost that [they were] required to pay and unable to negotiate." (*Id.* ¶¶ 14, 20). GM "failed to disclose that it had included profit in the Destination Charge." (*Id.* ¶¶ 15, 21). Plaintiffs were damaged by GM's "material misrepresentations and omissions" because they "overpaid" for their vehicles by paying the full Destination Charge. (*Id.* ¶¶ 17, 23). Had they known the truth, Plaintiffs "would not have purchased or leased the [ ] [v]ehicles, or would have paid significantly less for them." (*Id.* ¶¶ 61, 77).

Plaintiffs seek to represent the following classes:

> All consumers who, during the applicable statute of limitations, purchased or leased a Class Vehicle in the state of California and paid a Destination Charge (the "California Class"). All consumers who, during the applicable statute of limitations, purchased or leased a Class Vehicle in the state of New Jersey and paid a Destination Charge (the "New Jersey Class").

(*Id.* ¶ 44).

Plaintiffs brings the following individual and class claims against GM: (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (2) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (3) violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1; and (4) unjust enrichment (on behalf of both classes). Plaintiffs seeks declaratory and injunctive relief, restitution, disgorgement, damages, pre-judgment interest, and attorneys' fees and costs.

### III. CONTENTIONS

GM contends that its conduct was not deceptive because the amount and existence of the Destination Charge and total vehicle price was fully disclosed prior to purchase. GM

contends that Plaintiffs' statutory claims should be dismissed because: (1) GM had no duty to disclose any additional information about the charge; (2) whether profit is included in a charge is not a material fact to a reasonable or average consumer; and (3) Plaintiffs have not satisfied the CLRA, UCL, and NJCFA's standing requirements.  GM contends that the UCL claim should be dismissed due to the lack of predicate unlawful acts.  GM contends that Plaintiffs' equitable claims should be dismissed because Plaintiffs have an adequate remedy at law.

Plaintiffs contend that a disclosed fee can be deceptive to a reasonable or average consumer when it is misrepresented as a pass-through cost.  Plaintiffs contend that whether a reasonable consumer would be deceived is a question that is not appropriate for resolution at this stage of the litigation.  Plaintiffs contend that GM's alleged violation of the CLRA is an adequate basis for their UCL claim.  Plaintiffs contend that GM has a duty to disclose the existence of profit in the Destination Charge.  Plaintiffs contend that GM's misrepresentations and omissions are material.  Plaintiffs contend that the Complaint adequately alleges reliance, causation, and economic injury.  Plaintiffs contend that the Complaint alleges fact sufficient to support their claims for equitable relief and that they can plead in the alternative at this stage in the litigation.

## IV.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In order to state a claim for relief, a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Dismissal under Rule 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)).

Additionally, claims sounding in fraud must comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). Rule 9(b) "requires more specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

V. **DISCUSSION**

California's Consumers Legal Remedies Act prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. Among the twenty-four activities deemed unlawful by the CLRA, two are alleged in this case: "[r]epresenting that goods or services have . . . characteristics . . . that they do not have" and "[a]dvertising goods or services with intent not to sell them as advertised." *Id.* § 1770(a)(5), (9).

California's Unfair Competition Law prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Because Business & Professions Code § 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech*

*Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). A practice is "unlawful" if it violates other laws, including the CLRA. *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002). A practice is "fraudulent" if "members of the public are likely to be deceived." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012). The "unfair" prong of the UCL prohibits "practice[s] [that] may be deemed unfair even if not specifically proscribed by some other law." *Cel-Tech Commc'ns*, 20 Cal. 4th at 180.

New Jersey's Consumer Fraud Act prohibits:

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . ., or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby.

N.J. Stat. Ann. § 56:8-2. The NJCFA thus sets forth three general categories of unlawful acts: "(1) affirmative acts; (2) knowing omissions; and (3) regulatory violations." *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 245 (2005).

Plaintiffs allege that by calling the charge a "Destination Charge," GM affirmatively "misleads reasonable consumers into believing its 'Destination Charge' reflects the actual cost of shipping its vehicles to their 'destination,' not the cost of shipping its vehicles *plus* profit." (ECF No. 1 ¶ 26). The CLRA and the fraudulent prong of the UCL proscribe conduct that is "likely to deceive" a "reasonable consumer." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "[T]he reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). The NJCFA imposes a similar "average consumer" standard in determining whether conduct is unlawful. *See Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994) ("The capacity to mislead is the prime ingredient of all types of consumer fraud."); *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 98 (D.N.J. 2011)

("To constitute consumer fraud the business practice in question must be misleading and stand outside the norm of reasonable business practice in that it will victimize the average consumer."). "'[W]hether a practice is deceptive will usually be a question of fact not appropriate for decision on demurrer' or motions to dismiss." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020). However, "if common sense would not lead anyone to be misled, then the claim may be disposed of at a motion to dismiss stage." *Id.* at 1018; *see also Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 516 (D.N.J. 2009) ("[C]ourts have dismissed [NJCFA] complaints for failure to state a claim where plaintiffs have failed to allege that the defendant engaged in conduct that could be considered misleading within the meaning of the Act.").

The Complaint alleges that the price stickers on vehicles sold by GM "break out [a] Destination Charge separate and apart from the base MSRP and include it as an add-on." (ECF No. 1 ¶ 27). The Complaint alleges that this disclosure is mandated by the Federal Automobile Information Disclosure Act ("AIDA"), which requires manufacturers to list "the amount charged to the dealer for the transportation of the car to the place of delivery." (*Id.* ¶ 32). The Complaint alleges that "[a] vehicle's destination fee is generally understood in the automotive industry to reflect the manufacturer's average cost of delivering one of its vehicles to a dealership." (*Id.* ¶ 2). The Complaint alleges that "[l]ine items are intended to inform consumers of the reason they are being charged" and "[c]onsumers do not generally expect line-item costs to include hidden profit." (*Id.* ¶ 32). The Complaint alleges that GM's "'Destination Charge' has little to do with getting the vehicle to its intended destination" and instead is used as a "vessel for profit." (*Id.* ¶¶ 27-28). The Complaint alleges that by labelling the charge a "Destination Charge," GM "misleads reasonable consumers into believing its 'Destination Charge' reflects the actual cost of shipping its vehicles to their 'destination,' not the cost of shipping its vehicles *plus* profit." (*Id.* ¶ 26).

The word "charge"—as used in the Complaint—is defined as "the price demanded for something." Charge, Merriam Webster, https://www.merriam-

webster.com/dictionary/charge (last accessed Nov. 17, 2021); s*ee also Moore*, 966 F.3d at 1018 (discussing the dictionary definition of a term in analyzing whether a label was misleading to a reasonable consumer under California statutes); *Hassler*, 644 F. Supp. 2d at 516 (discussing dictionary definition in analysis of NJCFA claim).  Reasonable or average consumers would not be surprised to learn that the price of goods often includes profit for the seller.  The term "Destination Charge" does not reasonably imply an absence of profit.  *See Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1230 (9th Cir. 2019) (rejecting an argument that a term in a label was misleading "[j]ust because some consumers may unreasonably interpret the term differently").

As alleged in the Complaint, the amount and existence of the Destination Charge and the total listed sticker price of GM's vehicles were fully disclosed.  Plaintiffs received the vehicles they were promised at the prices they agreed upon.  GM's alleged disclosure of the Destination Charge complied with the AIDA requirement that manufacturers divulge "the amount charged, if any, to such dealer for the transportation of such automobile to the location at which it is delivered to such dealer."  15 U.S.C. § 1232(f)(3).  The statutory language contained in the AIDA—requiring disclosure of "the amount charged" to the dealer—no more suggests the absence of profit than the term "Destination Charge" itself.  In summary, the allegations concerning the context of the vehicles' sales do not alter the common-sense understanding that a charge can include profit.  *See Ebner*, 838 F.3d at 966 (affirming dismissal of UCL and CLRA claims because "[a]part from the accurate [ ] label, there are no other words, pictures, or diagrams adorning the packaging . . . from which *any* inference could be drawn or on which *any* reasonable belief could be based").  The Court concludes that the Complaint fails to allege facts to support an inference that Defendant made any affirmative misrepresentation.

In addition to alleging that the term "Destination Charge" is an affirmative misrepresentation, Plaintiffs also plead an omission theory of liability—that GM had a duty to disclose the existence of profit in the Destination Charge and failed to do so.  To be actionable under the CLRA, UCL, or NJCFA, the omitted fact must be material.  *See*

*Hodsdon v. Mars, Inc.*, 891 F.3d 857, 863 (9th Cir. 2018) (requiring the plaintiff to allege that an omission is material to plead a claim under California consumer protection laws); N.J. Stat. Ann. § 56:8-2 (prohibiting the "act, use or employment by any person of any . . . knowing concealment, suppression, or omission of any *material* fact . . . ." (emphasis added)). A fact is material if a reasonable person would attach importance to its existence in determining his or her course of action. *See Friedman v. AARP, Inc.*, 855 F.3d 1047, 1055 (9th Cir. 2017); *Peters v. U.S. Dep't of Housing & Urban Dev.*, No. Civ. 04:06057-RBK, 2006 WL 278916, at *5 (D.N.J. Feb. 1, 2006).

The Court has concluded that a reasonable or average consumer would not expect the Destination Charge to exclude profit. As a result, additional disclosure of the fact that the charge includes profit would not affect a reasonable or average consumer's understanding of the composition of the Destination Charge. GM's omission of additional information regarding the Destination Charge is not material.

The unlawful prong of the UCL "borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 n.8 (9th Cir. 2011). The Complaint alleges that GM's conduct was unlawful under the UCL because GM's conduct violated the CLRA and California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*. The reasonable consumer standard applies to both of these borrowed statutes. *See Williams*, 552 F.3d at 938. Plaintiffs' unlawful-prong UCL claim fails because the Complaint does not adequately plead a violation of any predicate law.

The "unfair" prong of the UCL prohibits "practice[s] [that] may be deemed unfair even if not specifically proscribed by some other law." *Cel-Tech Commc'ns*, 20 Cal. 4th at 180.

> Under the UCL's unfairness prong, courts consider either: (1) whether the challenged conduct is tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law; (2) whether the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to

consumers; or (3) whether the practice's impact on the victim outweighs the reasons, justifications and motives of the alleged wrongdoer.

*Doe v. CVS Pharm, Inc.*, 982 F.3d 1204, 1214-15 (9th Cir. 2020).  The factual basis for Plaintiffs' unfair-prong UCL claim is the same as for Plaintiffs' other claims.  Because the Complaint fails to allege facts to support an inference that GM's conduct is deceptive or violates any statutory provision, this Court joins numerous other district courts in holding that the unfair-prong claim must also be rejected.  *See Sue Shin v. Campbell Soup Co.*, No. CV 17-1082-DMG (JCx), 2017 WL 3534991, at *8 (C.D. Cal. Aug. 9, 2017) ("Here, Shin's UCL unfair prong claim overlaps entirely with her claim under the fraudulent prong. Accordingly, for the same reasons the Court granted Campbell's motion to dismiss as to the FAL, CLRA, and UCL fraudulent-prong claims, the Court [grants] Campbell's motion to dismiss Shin's unfair-prong UCL claim."); *Hadley v. Kellogg Sales Co.* 243 F. Supp. 3d 1074, 1105 (N.D. Cal. 2017) (collecting cases).  The Court concludes that the Motion to Dismiss is granted as to Plaintiff's CLRA, UCL, and NJCFA claims.

In California, "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (internal citations and quotations omitted). "To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016).  The test is the same under New Jersey law—"a plaintiff must show both that [the] defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994).

GM's conduct cannot be considered "unjust" because the Complaint fails to adequately allege facts to support an inference that GM's conduct is deceptive.  *See Ebner*, 838 F.3d at 968 ("Because we have concluded that the FAC fails to state a claim under any of these [California] statutes, the unjust enrichment cause of action has been mooted."); *Maniscalco v. Brother Intern. Corp. (USA)*, 627 F. Supp. 2d 494, 505 (D.N.J. 2009)

("Plaintiffs' unjust enrichment claims . . . are identical to their claims under the CFA . . . . Therefore, BIC's argument based solely on Plaintiffs' purportedly failed CFA allegations, has no merit."). The Court concludes that the Motion to Dismiss is granted as to Plaintiffs' unjust enrichment claims.

## VI. CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss Plaintiffs' Class Action Complaint filed by Defendant (ECF No. 12) is granted. The Class Action Complaint (ECF No. 1) is dismissed without prejudice. No later than thirty (30) days from the date of this Order, Plaintiffs Robert Romoff and Joe Siciliano may file any motion for leave to amend pursuant to Civil Local Rules 7.1 and 15.1(c). If no motion is filed, the case will be closed.

Dated: December 2, 2021

Hon. William Q. Hayes
United States District Court